IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CALVERT A. WILLIAMSON, | CIV. NO. 21-00098 JMS-RT |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 22 |
| vs. | |
| STATE OF HAWAII, GOVERNOR DAVID Y. IGE, PUBLIC SAFETY DEPARTMENT, MICHAEL HOFFMAN, FRANCIS SEQUEIRA, LANCE RABACAL, CESAR ALTARES, AND DANIEL BRYANT, | |
| Defendants. | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 22

## I. __INTRODUCTION__

Before the court is a Motion for Summary Judgment, ECF No. 22,

filed by Defendants State of Hawaii; the State of Hawaii's Department of Public

Safety; David Y. Ige, in his official capacity as Governor; Michael Hoffman, in his

official capacity as Institutions Division Administrator for the Department of

Public Safety; and Francis Sequeira, Cesar Altares, Daniel Bryant and Lance

Rabacal, in their individual capacities (collectively, "Defendants"). For the

reasons provided below, the Motion is GRANTED.

## II.  **BACKGROUND**[1]

On February 16, 2021, pro se Plaintiff Calvert Williamson ("Plaintiff") filed a Complaint alleging claims of racial discrimination relating to investigations conducted for and against him while he was employed at the Oahu Community Correctional Center ("OCCC")[2] in 2020.  *See* ECF No. 1.  The investigations were conducted by Captain Daniel Bryant and Administrator Lance Rabacal, and were indirectly overseen by Major Cesar Altares and Warden Francis Sequeira (collectively, "Investigator Defendants").

The investigations were formed on the bases of dueling grievances filed on July 2, 2020 by Plaintiff and his co-worker Lee Scruton.  The grievance complaints describe an argument that occurred in an open-office space of OCCC between Plaintiff, Scruton, and another co-worker, Christopher McConnell.  The argument concerned the skillsets of two African American quarterbacks playing in the National Football League.  At some point during the argument, Plaintiff—an African American—left the discussion and returned to his desk out of frustration, potentially because Scruton had used racially derogatory language when referencing the quarterbacks.  Scruton left the argument, too, and departed from the

---

[1] For purposes of this Order, the facts summarized in this section are undisputed, unless otherwise noted.

[2] The OCCC is owned and operated by the State of Hawaii's Department of Public Safety.  *See* https://dps.hawaii.gov/about/divisions/corrections/occc/ (last visited June 30, 2022).

open-office space through a stairway.  On his way out, Scruton passed by Plaintiff's desk, which was positioned near the edge of the stairway leading to the lower floor.  Plaintiff claims that while in the stairway, Scruton called him the "n-word" using a hushed voice.  Scruton denied saying the n-word and instead accused Plaintiff of threatening violence by challenging Scruton to "take it outside."  *See* ECF Nos. 23-7 through 23-10.  For the purposes of this Motion (construing evidence in the light most favorable to Plaintiff), the court assumes that Scruton called Plaintiff the n-word and used additional racially derogatory language, either in reference to the African American quarterbacks or in reference to Plaintiff.[3]  The court also assumes that Plaintiff did not challenge Scruton to "take it outside" (or any similar threat).

The Investigator Defendants initiated investigations into whether Scruton had racially harassed Plaintiff in violation of Department of Public Safety ("DPS") policy and whether Plaintiff had threatened violence against Scruton, also in violation of DPS policy.  Those investigations included taking statements from Plaintiff and Scruton, as well as from apparent witness McConnell.  Plaintiff and Scruton largely maintained their versions of the incident throughout the investigations.

---

[3] There is some evidence that Scruton used the term "monkey" and/or "silverback gorilla," *see* ECF No. 23-20, although the parties do not specifically dispute that point, nor does Plaintiff address it in his Complaint.

McConnell, however, changed the details of his story over the course of two written interviews:  McConnell initially stated he was unable to hear the exchange in the stairway but that he remembered "racial slurs . . . being thrown around" in the open-office space before the stairway altercation, although he "[could not] remember the exact words."  ECF No. 23-10 at PageID # 138.  Yet, in his second interview roughly two weeks later, McConnell stated that Scruton "did not use the N word" but "may have called [Plaintiff] a Silverback Gorilla," and McConnell recalled Plaintiff, "in some form, asking [Scruton] if he wanted to take it outside."  ECF No. 23-15 at PageID # 143.  The hearing officer presiding over the investigations later concluded that McConnell's testimony "was not credible because the two memos he submitted . . . were internally inconsistent and contained contradictions."  ECF No. 23-26 at PageID # 193; *see also id.* at PageID # 194 (stating that McConnell "contradicted himself" and, "[a]gain, there were concerns with McConnell's credibility").

After reviewing all of the evidence, the hearing officer concluded that there was insufficient evidence that Scruton had violated the discrimination and harassment policy.  *Id.*  She also concluded that there was insufficient evidence that Plaintiff had violated the workplace violence policy.  *Id.*  As a result, she recommended that Plaintiff and Scruton receive training on both policies, a

recommendation that was "not considered disciplinary action." *Id.* Plaintiff was *not* terminated from his position or otherwise subjected to punishment.

Plaintiff claims that the investigations were biased against him because of his race. *See* ECF No. 1 at PageID # 8 ("The parties, supra, willfully, and criminally collaborated and conspired to find me guilty, because of my race . . . ."). He specifically alleges that Administrator Rabacal coerced McConnell to change his story in the second interview, including by pushing him to attest that he heard Plaintiff utter "take it outside." *See id.* at PageID ## 7–8. According to Plaintiff, the other Investigator Defendants either directed or were complicit in that coercion. *See id.* And they achieved that coercion by threatening to hold McConnell's deficient work performance against him, Plaintiff argues. *See id.* Plaintiff also alleges that the Investigator Defendants unfairly apprised Scruton of the substance of Plaintiff's complaint and/or written statement, in violation of DPS policy requiring confidentiality in the grievance process. *See id.* at PageID # 10; *see also* ECF No. 25 at PageID # 223.

Plaintiff's Complaint, liberally read,[4] frames those allegations into eight types of legal claims: (1) racial discrimination under Title VII, 42 U.S.C.

---

[4] "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 (9th Cir. 2011) (citations and internal quotation mark omitted).

§ 2000e et seq.; (2) racial discrimination under Title VI, 42 U.S.C. § 2000d et seq.;

(3) procedural due process violation under the Fourteenth Amendment;

(4) substantive due process violation under the Fourteenth Amendment;

(5) violation of 18 U.S.C. § 242, "[d]eprivation of rights under color of law";

(6) racial discrimination under the Equal Protection Clause of the Fourteenth

Amendment; (7) 42 U.S.C. § 1983 claim based on racial discrimination under the

Equal Protection Clause of the Fourteenth Amendment; and (8) violations of

Hawaii common law and Hawaii Revised Statutes ("HRS").  *See* ECF No. 1.

Plaintiff requests damages in the amount of $2,500,000 but no injunctive relief.

*See id.* at PageID ## 14–15.

On March 30, 2022, Defendants filed a Motion for Summary

Judgment challenging all of Plaintiff's claims, ECF No. 22, and supported by a

Concise Statement of Facts, ECF No. 23.  Plaintiff filed an Opposition on April 26,

2022.  ECF No. 25.  Despite not submitting a responsive concise statement of

facts, Plaintiff provides some evidence in support of his Opposition in form of two

attachments.  *See id.* at PageID ## 234–37.  Defendants filed a Reply on May 2,

2022.  The court decides the Motion without a hearing pursuant to Local Rule

7.1(c).

### III.  <u>STANDARDS OF REVIEW</u>

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law."  *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "When the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"; instead, the opponent must "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586–87 (1986) (citation and internal quotation marks omitted).  The court views the facts and draws reasonable inferences in the light most favorable to the nonmovant.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Parties can raise the issue of subject matter jurisdiction as late as summary judgment, and the court may sua sponte address subject matter jurisdiction at any point in the case.  *See Rath Packing Co. v. Becker*, 530 F.2d

1295, 1303 (9th Cir. 1975), *aff'd sub nom. Jones v. Rath Packing Co.*, 430 U.S. 519 (1977).

## IV.  <u>DISCUSSION</u>

Before analyzing Plaintiff's eight claims, it is helpful to identify the injuries alleged in the Complaint, as those alleged injuries clarify the nature of Plaintiff's legal theories.  Importantly, Plaintiff does not sue Scruton or McConnell, nor does he request specific action relating to those employees. Plaintiff also does not assert that the investigation into his purported violent threats was improperly instituted.  Plaintiff instead sues management at OCCC (along with the State of Hawaii officials overseeing OCCC) for alleged improprieties affecting the investigations—tampering of a witness and divulging a grievance.

And although investigational improprieties might cause merely "procedural injuries,"[5] the fact that Plaintiff is asserting claims grounded in procedural laws—e.g., procedural due process—*as well as claims grounded in substantive laws*—e.g., the Equal Protection Clause—reveals that Plaintiff's alleged harms are more than just procedural.  The most liberal interpretation of the Complaint is that the alleged improprieties influenced the results of the investigations in a manner unfavorable to Plaintiff.  To be sure, according to his

---

[5] *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571 (1992); *see also id.* at 601 (Blackmun, J., dissenting) ("The [majority] concludes that any 'procedural injury' suffered by respondents is insufficient to confer standing.").

Complaint, Plaintiff was not fired, demoted, or otherwise punished in any way. But he claims that Defendants sought to find him guilty of violating DPS policy because of his race and attempted to achieve that end through the alleged improprieties.  One could view the consequence of those improprieties—strengthening the investigation that was conducted against Plaintiff and that ran counter to his allegations of racial harassment—as creating, in the hearing officer's mind, a situation akin to "offsetting penalties" in the National Football League: The stronger the evidence of Plaintiff's wrongdoing, the less likely Scruton's wrongdoing was going to be punished.  *Cf.* ECF No. 23-20 at PageID # 173 (Major Altares concluding that "[a]lthough violence can never be condoned, in this case [Plaintiff] being called a 'Silverback Gorilla,' an inflammatory racial slur[,] could be a mitigating factor that should be considered").  Naturally, then, Scruton would be more likely to racially harass Plaintiff in the future without the deterrence of a punishment.  With that injury in mind—i.e., injury from counterpoised investigations—the court analyzes Plaintiff's claims in the order presented above.

A.    **Title VII Claim**

Plaintiff's first claim is for racial discrimination under Title VII.  The court lacks jurisdiction over this claim because Plaintiff neither alleges nor argues that he exhausted his administrative remedies.  *See Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002).  Specifically, Plaintiff has not

"fil[ed] a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." *Id.* (citation omitted); *see also* 42 U.S.C. § 2000e-5(e)–(f). The court thus lacks subject matter jurisdiction over that claim. *See Freeman*, 291 F.3d at 636.

## B.    Title VI Claim

Plaintiff's racial discrimination claim under Title VI is deficient because Plaintiff does not provide evidence that OCCC is an entity "receiving federal financial assistance." *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001). True, in his Opposition, Plaintiff cites to a DPS "Federal Financial Assistance" policy stating that DPS "receives federal financial assistance for certain functions." ECF No. 25 at PageID # 232. But even if the court were to consider that citation, Plaintiff provides no evidence regarding whether the "primary objective of [the federal financial assistance] was to provide employment," nor does he provide any evidence regarding whether "the funds went to discriminatory programs or activities," as required under Title VI. *Gao v. Hawaii Dep't of Atty. Gen.*, 2010 WL 99355, at *5 (D. Haw. Jan. 12, 2010) (citing *Temengil v. Tr. Territory of Pac. Islands*, 881 F.2d 647, 653 (9th Cir. 1989)), *aff'd sub nom. Gao v. Hawaii*, 424 F. App'x 641 (9th Cir. 2011); 42 U.S.C. § 2000d-3. Without such evidence

10

concerning the specifics of federal funding, a reasonable juror could not find for Plaintiff on his Title VI claim—summary judgment is thus appropriate.  *See Fobbs*, 29 F.3d at 1447 ("As long as some federal funding is alleged . . . , the program specificity issue is more properly the subject of a summary judgment motion." (quoting *Byers v. Rockford Mass Transit Dist.*, 635 F. Supp. 1387, 1390 (N.D. Ill. 1986))).

## C.     Procedural Due Process Claim

Plaintiff's procedural due process claim[6] fails because there is no evidentiary basis on which a reasonable juror could conclude that Plaintiff was deprived of a "liberty or property interest protected by the Constitution."  *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993) (reciting elements of a Fourteenth Amendment procedural due process claim).  Plaintiff was not fired, demoted, or otherwise punished in any way.  And the procedural deficiencies asserted by Plaintiff—witness tampering and grievance divulging—cannot themselves constitute a deprived liberty interest.  *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.").  Moreover, to the extent Plaintiff argues that he has a liberty interest

---

[6] The Complaint alleges that "[t]he [Defendants] willfully deprived me of due process by collaboratively conspiring forcing the witness, Christopher McConnell, to change his written statement."  ECF No. 1 at PageID # 8.

in being free from racial harassment in the workplace—an interest prejudiced by counterpoised investigations—the possibility that a proper investigation would have resulted in punishment against Scruton, severe enough to curtail future harassment, is too speculative to constitute a constitutionally protected liberty interest. *See, e.g.*, *Rubio v. Ramirez*, 2013 WL 1704703, at *5 (E.D. Cal. Apr. 19, 2013) (concluding that defendant's actions "ma[king] the possibility of [plaintiff's] parole less probable" was a "speculative deprivation . . . not aris[ing] to a constitutional liberty interest"); *see also Khachatryan v. Blinken*, 4 F.4th 841, 856 (9th Cir. 2021) (analyzing procedural due process claim and asserted liberty interest, and stating that "[t]he Supreme Court has instructed us to 'exercise the utmost care' before 'break[ing] new ground' in the area of unenumerated fundamental rights" (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992))).

## D.   Substantive Due Process Claim

Plaintiff's substantive due process claim[7] also fails.  That is because racial discrimination is the essence of Plaintiff's case,[8] and because the Fourteenth

---

[7] The Complaint alleges that "the [Defendants] willfully, and criminally collaborated and conspired to find me guilty, because of my race, of PSD Workplace Non-violence policy to deprive me of substantive due process."  ECF No. 1 at PageID # 8.

[8] *See generally* ECF No. 1; *see also* ECF No. 25 at PageID # 221 (Plaintiff arguing in the introduction of his Opposition that "summary judgement should be denied because the Defendant[s] fail to state a legitimate *non-discriminatory reason* for intimidating a witness,

(*continued . . .* )

Amendment provides an explicit textual source of protection against racial discrimination.  *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'"  (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))). Accordingly, "[b]ecause the Equal Protection Clause covers the actions challenged in the complaint, [Plaintiff] may not proceed on a substantive due process theory." *Johnson v. State of Cal.*, 207 F.3d 650, 656 (9th Cir. 2000).  Defendants are, therefore, entitled to judgment as a matter of law on Plaintiff's substantive due process claim.

## E.    Claim Under 18 U.S.C. § 242

Plaintiff's fifth claim is under 18 U.S.C. § 242.  That statute provides *criminal liability* for actors that deprive persons of rights, privileges, or immunities on the basis of race, color, or alien status.  *See id.* ("[Violators] shall be fined under this title or imprisoned not more than one year, or both."); *see also United States v. Page*, 302 F.2d 81, 85 (9th Cir. 1962) (describing "Title 18 U.S.C." as the "Criminal Code").  Because § 242 is a criminal liability statute, Plaintiff cannot

---

creating a hostile environment, failing to address discrimination, and failing to refute direct evidence" (emphasis added)).

assert a claim under that statute in this civil case. *See Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006). Put differently, Plaintiff lacks standing to assert such a claim, and the court thus lacks subject matter jurisdiction over that claim. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

**F.     Equal Protection Claim Under the Fourteenth Amendment**

Plaintiff's sixth claim is for racial discrimination under the Equal Protection Clause of the Fourteenth Amendment. That claim fails because Plaintiff has no direct cause of action under the United States Constitution against Defendants (the State of Hawaii, its entity DPS, official-capacity Defendants, and individual-capacity Defendants). *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). Moreover, the State of Hawaii has not waived its sovereign immunity with respect to an equal protection claim seeking money damages. *See Abing v. Evers*, 2021 WL 3871299, at *6 (D. Haw. Aug. 30, 2021) ("The Hawaii Supreme Court has . . . 'f[ound] no provision in the State Tort Liability Act [(HRS § 662-2)] that expressly makes the State liable in money damages for constitutional violations.'" (quoting *Figueroa v. State*, 61 Haw. 369, 383, 604 P.2d 1198, 1206 (1979))). Defendants are, therefore, entitled to judgment as a matter of law on Plaintiff's stand-alone equal protection claim.

### G.    Equal Protection Claim Under 42 U.S.C. § 1983

Like his sixth claim, Plaintiff's seventh claim is based on racial discrimination under the Equal Protection Clause of the Fourteenth Amendment. Unlike his sixth claim, Plaintiff's seventh claim is brought pursuant to 42 U.S.C. § 1983, which protects the "'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States," *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (quoting 42 U.S.C. § 1983).  But, it is clear that § 1983 cannot be used to sue states or state agencies, because they are not "persons" within the statute's meaning.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *see also Makanui v. Dep't of Educ.*, 6 Haw. App. 397, 406, 721 P.2d 165, 171 (1986) ("Hawaii has not waived its sovereign immunity from § 1983 damages liability.").  Accordingly, Defendants State of Hawaii and its DPS, as well as official-capacity Defendants David Ige and Michael Hoffman, are entitled to summary judgment on Plaintiff's § 1983 claim.

Section 1983 does, however, permit individual-capacity suits against persons for money damages who, acting under the color of state law, denied an individual of his or her rights guaranteed by the Constitution or laws of the United States. *Browning v. Vernon*, 44 F.3d 818, 821 (9th Cir. 1995).  Such rights include

the right to be free from racial discrimination under the Equal Protection Clause of the Fourteenth Amendment. *See Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1112 (9th Cir. 1991). In that regard, Plaintiff's Complaint, liberally read, alleges three Fourteenth Amendment claims:[9] a disparate-treatment claim, a hostile-work-environment claim, and a retaliation claim.

### (1) Disparate Treatment

To sustain his disparate-treatment claim, Plaintiff must make a prima facie showing that (1) he belongs to a protected class, (2) he was qualified for the position, (3) he was subject to an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably. *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000) (listing elements for Title VII disparate-treatment claim); *Sischo-Nownejad*, 934 F.2d at 1112 ("A plaintiff who fails to establish intentional discrimination for purposes of Title VII . . . also fails to establish intentional discrimination for purposes of § 1983."); *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 754 (9th Cir. 2001) ("[S]ummary judgment decisions with regard to § 1983 claims are remarkably similar to their Title VII counterparts.").

---

[9] Contrary to Defendants' contention, *see* ECF No. 22-3 at PageID # 106, Plaintiff's § 1983 claims are not "subsumed" (i.e., barred or precluded) by the applicability of Title VI or Title VII. *See, e.g.*, *Marks v. Santa Rosa City Sch.*, 748 F. App'x 159, 160 (9th Cir. 2019) (citing and analogizing to *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258-59 (2009)).

Plaintiff clearly satisfies the first element, and the court assumes that he satisfies the second and fourth elements. Furthermore, viewing Plaintiff's counterpoised-investigations theory in the light most favorable to him, the court presupposes that Plaintiff has suffered an "adverse employment action," as required by the third element. *See Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) ("We define 'adverse employment action' broadly."); *see also* ECF No. 25 at PageID ## 234–37 (attachments giving slight plausibility to the conclusion that Investigator Defendants influenced McConnell).

With that prima facia showing, the burden of production shifts to the Investigator Defendants to offer a legitimate, nondiscriminatory reason for taking the adverse employment action (i.e., maintaining and enabling counterpoised investigations). *See Fonseca*, 374 F.3d at 849. They have done so. The Investigator Defendants provide evidence demonstrating that they conducted the second interview of McConnell as a supplement to the first interview because some of his answers were unclear, and because OCCC officials needed additional information from the sole witness to the incident. *See* ECF No. 23-5 at PageID # 131 (declaration of hearing officer); ECF No. 23-16 (memo from Administrator Rabacal to Warden Sequeira). The details of the investigation documents also demonstrate that bits and pieces of Plaintiff's grievance were revealed to McConnell and Scruton in the form of interview questions—a reasonable

examination tactic that explains how Scruton was made aware of the substance of Plaintiff's grievance before the hearing officer published her final decision.  *See, e.g.*, ECF No. 23-17 (written question asking Scruton whether he mentioned or used the n-word or "silverback" in Plaintiff's presence).

Plaintiff must now show that "the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"  *Chuang*, 225 F.3d at 1124.  He has failed to do so.  Plaintiff's only evidence that McConnell was pressured to change his testimony is very speculative.  *See* ECF No. 25 at PageID ## 234–37 (performance-improvement plan instituted against McConnell during the year *after* the pertinent incident).  Beyond that, Plaintiff provides only conclusory assertions: The Investigator Defendants were biased against Plaintiff because of his race; logically, then, the Investigator Defendants must have tampered with McConnell.  *See id.* at PageID ## 223–24, 228–29.  That speculation—which concerns capacity to intimidate, not the motivation for doing so—does not satisfy Plaintiff's burden of production with respect to *pretext* and *intentional discrimination*.  There is insufficient evidence for a reasonable juror to conclude that the Investigator Defendants discriminated against Plaintiff through disparate treatment.

### (2)   *Hostile Work Environment*

To sustain his hostile-work environment claim, Plaintiff must make a prima facie showing that, *inter alia*, he was "subjected to verbal or physical conduct because of a protected characteristic such as sex or race." *Leland v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1101 (N.D. Cal. 2008) (listing elements for Title VII hostile-work-environment claim) (citing *Nichols v. Azteca Rest. Enterprises, Inc.*, 256 F.3d 864, 872 n.4 (9th Cir. 2001)).  The alleged investigational improprieties cannot satisfy that element, because they are not "verbal or physical conduct."  And Scruton's verbal harassment cannot satisfy that element, either, because Scruton is not a Defendant and the Investigator Defendants "are [generally] not liable for the actions of subordinates on any theory of vicarious liability under 42 U.S.C. § 1983." *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001).  The situations in which supervisors can be liable under § 1983 are when there is "(1) . . . personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Id.* (citation and internal quotation marks omitted).  Neither condition is met in this case.

### (3)  Retaliation

It is questionable whether an "equal protection retaliation claim" exists in the Ninth Circuit.[10]  But even if it does, Plaintiff must make a prima facie showing that (1) he engaged in protected activity, (2) defendant(s) took action that was materially adverse to him, and (3) there was a causal relationship between the two.  *See Westendorf v. W. Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 422 (9th Cir. 2013) (listing elements for a Title VII retaliation claim).  Additionally, Plaintiff must show a fourth element—that defendant(s) acted with an intent or purpose to discriminate against him based upon his membership in a protected class.  *See Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) ("To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class."); *Maynard*, 37 F.3d at 1404 (implying existence of equal protection "retaliation claim") ("The district court correctly

---

[10] It appears that almost every court of appeal to have addressed whether a retaliation claim can be brought under the Fourteenth Amendment's Equal Protection Clause has answered that question in the negative.  *See, e.g.*, *Wilcox v. Lyons*, 970 F.3d 452, 461 (4th Cir. 2020) ("[W]e join the vast majority of circuit courts to have considered the question. At least six of our sister circuits have held that the Equal Protection Clause cannot sustain a pure claim of retaliation.") (collecting cases).  "But there is not a Ninth Circuit (or Supreme Court) [decision] flatly holding that Equal Protection does not apply to a retaliation claim." *Ballou v. McElvain*, 2020 WL 1904062, at *4 (W.D. Wash. Apr. 17, 2020) ("It is a close question."), *aff'd and remanded*, 29 F.4th 413 (9th Cir. 2022).  The most relevant decision from the Ninth Circuit— *Maynard v. City of San Jose*, 37 F.3d 1396 (9th Cir. 1994)—implies the existence of such a claim, but does not expressly hold so. *See id.* at 1404; *Ballou*, 2020 WL 1904062, at *4.

explained the law [controlling the § 1983 retaliation claim].  Intentional

discrimination means that a defendant acted at least in part because of a plaintiff's

protected status.").  Without the fourth element, an "equal protection retaliation

claim" would collapse into a retaliation claim under the First Amendment—a

specious result, indeed.  *Cf. Sampson v. Cnty. of Los Angeles by & through Los*

*Angeles Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1019 (9th Cir. 2020)

("To state a First Amendment retaliation claim, [a plaintiff] must plausibly allege

that (1) she engaged in a constitutionally protected activity, (2) Defendants' actions

would chill a person of ordinary firmness from continuing to engage in the

protected activity, and (3) the protected activity was a substantial or motivating

factor in Defendants' conduct.").

          Plaintiff's grievance is a protected activity, and the court assumes

arguendo that he could prove that the investigational improprieties were materially

adverse to Plaintiff and that Plaintiff's submitting his grievance is causally

connected to the improprieties.  Still, Plaintiff has presented no evidence, direct or

circumstantial, that such a retaliation was committed based upon his race.  At most,

Plaintiff provides conclusory *argument* that because the alleged improprieties were

committed against him—and not against Scruton, a Caucasian—they must have

been committed because Plaintiff is African American.  *See, e.g.*, ECF No. 25 at

PageID ## 223–24.  Notably, Plaintiff does not provide a declaration or a concise

statement of facts setting out the alleged improprieties.  And the attachments he does provide concern whether it is plausible that the Investigator Defendants could have intimidated McConnell into changing his testimony, *see id.* at PageID ## 234–37, an action that could have been motivated by a multitude of non-discriminatory reasons, e.g., dislike of Plaintiff's personality or disdain for Plaintiff's gumming-up the grievance queue.

Given the lack of evidence specific to discriminatory intent, a reasonable juror could not conclude that the Investigator Defendants retaliated against Plaintiff because of his race.  *See Matsushita*, 475 U.S. at 586–87; *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006) (employment discrimination case) ("The notion of a required specificity of evidence to defeat summary judgment has some grounding in Fed. R. Civ. P. 56(e) which, in dealing with the form of affidavits submitted opposing summary judgment, requires that 'the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific* facts showing that there is a genuine issue for trial.'  (Emphasis added).  Thus, we have equated 'specific, substantial' evidence with evidence sufficient to raise a genuine issue of material fact under

Rule 56(c).").[11]  For those reasons, Investigator Defendants are entitled to

judgment as a matter of law on Plaintiff's § 1983 claim.

## H.     State Law Claims

Finally, Plaintiff asserts various claims under Hawaii common law,

including defamation, negligent supervision, negligent retention, and intentional

infliction of emotional distress.  *See* ECF No. 1 at PageID ## 12–14.  Plaintiff also

asserts claims under Hawaii Revised Statutes, including under HRS § 710-1071

("Intimidating a witness") and HRS § 378 et seq. ("Employment Practices";

"Discriminatory Practices").  *See* ECF No. 1 at PageID ## 10–12.  The court

declines to exercise supplemental jurisdiction over those state-law claims. *See* 28

U.S.C. § 1367(c)(3); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir.

1997) (en banc) ("[I]n the usual case in which all federal-law claims are eliminated

before trial, the balance of factors . . . will point towards declining to exercise

jurisdiction over the remaining state-law claims."  (citation omitted)).  And there is

no diversity jurisdiction under 28 U.S.C. § 1332(a), given that the parties in this

case are not diverse.  *See* ECF No. 1 at PageID # 2 ("I was and remain a citizen of

---

[11] To the extent an "equal protection retaliation claim" does not require a *prima facie* showing of intentional or purposeful discrimination—but instead incorporates discriminatory intent through the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)—the end result would be the same:  Plaintiff's retaliation claim would fail because he has not met his burden with respect to showing pretext and intentional discrimination.

the United States, a resident of Hawaii.").  The state-law claims are dismissed

without prejudice to refiling in state court.[12]

## V. <u>CONCLUSION</u>

For the reasons expressed above, Defendants' Motion for Summary

Judgment, ECF No. 22, is GRANTED in full.  Judgment shall enter in favor of

Defendants, and the Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 30, 2022.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Williamson v. State of Hawaii et al.*, Civ. No. 21-00098 JMS-RT, Order Granting Defendants' Motion for Summary Judgment, ECF No. 22

---

[12] If Plaintiff files a complaint in state court to seek redress for the alleged violations of state law, the statute of limitations on those state law claims would be tolled for the period that this federal case was pending.  *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."); *Artis v. Dist. of Columbia*, 138 S. Ct. 594, 598 (2018) (holding that "§ 1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance, i.e., to stop the clock").